UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

ROBERT L. BOLICK,

Plaintiff(s),

v.

ROBERT A. PASIONEK,

Defendant(s).

Case No. 2:15-CV-177 JCM (NJK)

ORDER

Presently before the court is defendant Robert Pasionek's (hereinafter, "defendant") motion to dismiss. (Doc. # 4). Plaintiff Robert Bolick (hereinafter, "plaintiff") filed a response, (doc. # 13), and defendant filed a reply, (doc. # 18).

Also before the court is defendant's request for judicial notice. (Doc. # 5). Plaintiff filed a notice of non-opposition to defendant's request for judicial notice. (Doc. # 14).

Also before the court is defendant's request for sanctions. (Doc. # 6). Plaintiff filed a response, (doc. # 15), and defendant filed a reply, (doc. # 20).

Also before the court is plaintiff's motion to stay a ruling on defendant's motion to dismiss. (Doc. # 16). Defendant filed a response, (doc. # 21), and plaintiff filed a reply, (doc. # 22).

**I. Background**

In 2008, plaintiff was a member of the, now dissolved, law firm Bolick & Boyer (hereinafter, "B&B"). (Docs. ## 4, 4-2). Defendant was a Nevada resident and attorney. (Doc. # 4-2). B&B engaged in negotiations with defendant concerning his possible employment with the firm. (Doc. # 4-2). Around December 30, 2008, defendant and B&B entered into an employment agreement. (Doc. # 4-2). Under the agreement, defendant was to receive $25,000 per month as a draw against his compensation. (Doc. # 1-1). If defendant's draws exceeded the total collections

allocated to him during quarterly periods, defendant was to pay the negative balance to the firm. (Doc. # 1-1).

From December 16, 2008, to April 15, 2009, defendant received four draws totaling $100,000. (Doc. # 1-1). In that same period, defendant allegedly failed to bill any hours and collect any money. (Doc. # 1-1). On April 28, 2009, defendant was terminated from the firm. (Doc. # 1-1). At this time, defendant had not yet paid off the negative balances. (Doc. # 1-1).

Subsequently, defendant met with B&B to discuss settling the dispute. (Doc. # 1-1). The two parties entered into an amended agreement, whereby defendant's monthly draws were reduced, and defendant still owed the negative draws previously incurred. (Doc. # 1-1). This relationship was short-lived, as defendant left the firm again sometime in June of 2009. (Doc. # 1-1). Although some amount of money was paid towards the negative balance, the vast majority was still due. (Doc. # 1-1).

On August 31, 2009, plaintiff was assigned all rights, claims, and other interests that the firm had concerning the amounts owed by defendant to the firm through an "Assignment and Assumption Agreement." (Docs. ## 4, 4-2).

On December 8, 2009, the firm filed a complaint in state court (hereinafter, the "2009 complaint") against defendant for breach of contract, breach of the covenant of good faith and fair dealing, intentional misrepresentation, negligent misrepresentation, unjust enrichment, and for an accounting of the funds defendant may have collected for work performed while with the firm. (Doc. # 1-1). This was done despite the fact that these claims were assigned to plaintiff individually through the "Assignment and Assumption Agreement." (Doc. # 4). In response, defendant filed counterclaims. (Doc. # 4-1). The 2009 complaint was removed to federal district court on March 15, 2010. (Doc. # 4).

On May 27, 2010—while that litigation was pending—plaintiff filed a voluntary chapter 7 bankruptcy petition in the District of Nevada seeking to discharge over $11,000,000 in liabilities. (Doc. # 4). In this petition, plaintiff did not include his claims against defendant as part of his assets. (Doc. # 4). However, plaintiff did include the defendant's counterclaims as liabilities. (Doc. # 4).

On March 2, 2011, the district court granted a "Stipulation and Order for Dismissal Without Prejudice," wherein all parties agreed to dismiss all of their claims. (Doc. # 4). On August 30, 2011, plaintiff received a standard discharge in the bankruptcy matter. (Doc. # 4).

On December 30, 2014, plaintiff filed the instant complaint in state court based upon the same factual allegations as the 2009 complaint. (Doc. # 4). However, the instant complaint asserts only claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. (Doc. # 4-2). Defendant removed the matter to this court on January 30, 2014. (Doc. # 4).

On February 6, 2015, defendant filed the instant motion to dismiss the complaint on the basis of judicial estoppel. (Doc. # 4). Defendant also requests sanctions and judicial notice of filings concerning the 2009 complaint and previous bankruptcy matter. (Doc. # 4). In response, plaintiff filed a motion to reopen his bankruptcy case and the instant motion to stay. (Docs. ## 13-1, 16).

## II. Discussion

Defendant has brought a motion to dismiss, a request for judicial notice, and a request for sanctions against plaintiff. Plaintiff asks this court to stay its ruling on defendant's motion to dismiss, so that plaintiff may reopen his bankruptcy case in order to amend his schedules to include his claims against defendant as an asset. As the request for judicial notice pertains to the motion to dismiss and stay, this request will be analyzed first. The court will then address plaintiff's motion to stay, to determine whether consideration of the motion to dismiss is appropriate at this time.

### *A. Request for judicial notice*

#### *i. Legal standard*

Under Federal Rule of Evidence 201(b), the court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Furthermore, the court may take judicial notice of matters of public record outside the pleadings and consider them for purposes of a motion to

dismiss. *United States v. Corinthian Colls.*, 655 F.3d 984, 999 (9th Cir. 2011). Doing so does not convert a Rule 12(b)(6) motion to one for summary judgment if the facts noticed are not subject to reasonable dispute. *Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007).

*ii. Analysis*

Defendant requests that the court take judicial notice of the pleadings related to the 2009 complaint, and plaintiff's chapter 7 bankruptcy filings. (Doc. # 4-1, exhibit 1). Plaintiff does not argue that judicial notice of these documents would be improper.

The documents at issue are matters of public record. Moreover, other courts in this jurisdiction have found it proper to take notice of such documents in the past. *See Daprizio v. Harrah's Las Vegas, Inc.*, No. 2:10-CV-00604-GMN, 2013 WL 5328386, at *3 (D. Nev. Sept. 20, 2013) (taking judicial notice of plaintiff's chapter 7 bankruptcy filing, schedule, and discharge, as matters of public record). Therefore, judicial notice of the submitted documents is proper, and defendant's request for judicial notice will be granted.

*B. Motion to stay*

*i. Legal standard*

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936); *accord Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007).

If there is a fair possibility that the stay will work damage to the non-movant, a stay may be inappropriate if the moving party fails to show hardship or inequity. *Dependable Highway*, 498 F.3d at 1066. Furthermore, there is a general policy in favor of stays of short, or at least reasonable, duration. *Id.* Therefore, "[a] stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time." *Id.*

*ii. Analysis*

Plaintiff asserts that a stay is appropriate in this case because a stay would allow him to reopen his bankruptcy case and amend his schedules to include his claims against defendant as an asset. Plaintiff argues that defendant's motion to dismiss relies solely on the fact that plaintiff omitted his claims against defendant from his list of assets in his bankruptcy. Under plaintiff's view, if the court granted a stay, plaintiff would be permitted to remedy this issue.

Defendant argues that a stay would be pointless in this case. Under defendant's view, if this court granted a stay, either (1) plaintiff's motion to reopen his bankruptcy would be denied, and therefore plaintiff would remain judicially estopped from pursuing the instant action, or (2) plaintiff's motion to reopen his bankruptcy would be granted, and plaintiff would lose standing to pursue the claim, as only the trustee of the reopened bankruptcy estate would have standing.

Plaintiff concedes that if the bankruptcy case is reopened, only the trustee has standing to pursue these claims on behalf of the estate. However, plaintiff claims that the bankruptcy trustee could abandon the claims, in which case, plaintiff would be entitled to pursue them.

Plaintiff's position assumes that if he were able to amend his asset schedules (and he retained standing to pursue his claims), defendant's judicial estoppel argument would necessarily fail. This is not so. In many instances the Ninth Circuit has held that judicial estoppel was appropriate despite the fact that the plaintiff reopened his bankruptcy proceedings. *See, e.g., Dzakula v. McHugh*, 746 F.3d 399, 400 (9th Cir. 2014); *see also Laisure-Radke v. Barr Labs.*, Inc., 313 F. App'x 32, 34 (9th Cir. 2009); *Rose v. Beverly Health & Rehab. Servs., Inc.*, 295 F. App'x 142, 144 (9th Cir. 2008).

This court sees no reason to stay a ruling on defendant's motion to dismiss. There is no certainty that plaintiff will be permitted to reopen his case and amend his asset schedules. Even if plaintiff were permitted to do so, that fact alone would not defeat defendant's claim for judicial estoppel. Therefore, plaintiff's motion to stay a ruling on defendant's motion to dismiss will be denied. The court will now consider the motion to dismiss on the merits.

*C. Motion to dismiss*

Defendant claims that plaintiff's complaint is properly dismissed because plaintiff is judicially estopped from pursuing his claims, and plaintiff lacks standing to pursue his claims. These arguments will be addressed in turn.

*i. Legal standard*

*a. Rule 12(b)(6)*

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) on the basis of an affirmative defense is proper only if the defendant shows some obvious bar to securing relief on the face of the complaint." *ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014). If, from the allegations of the complaint as well as any judicially noticeable materials, an asserted defense raises disputed issues of fact, dismissal under Rule 12(b)(6) is improper. *Id.*

Generally, if a district court considers evidence outside of the pleadings when ruling on a Rule 12(b)(6) motion to dismiss, it must convert the motion to dismiss into a motion for summary judgment, and it must give the nonmoving party an opportunity to respond. *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). However, a "court may consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908; *Coble v. DeRosia*, 823 F. Supp. 2d 1048, 1050 (E.D. Cal. 2011). As stated earlier, this court has taken judicial notice of the pleadings related to the 2009 complaint, as well as plaintiff's chapter 7 bankruptcy filings.

*b. Judicial estoppel*

"Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001). "This court invokes judicial estoppel not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of general considerations of the orderly administration of

justice and regard for the dignity of judicial proceedings, and to protect against a litigant playing fast and loose with the courts." *Id.* (internal citations and quotations omitted).

The Supreme Court has provided guidance as to what courts should consider in deciding whether to apply the doctrine of judicial estoppel:

> [S]everal factors typically inform the decision whether to apply the doctrine in a particular case: First, a party's later position must be "clearly inconsistent" with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled." Absent success in a prior proceeding, a party's later inconsistent position introduces no "risk of inconsistent court determinations," and thus no threat to judicial integrity. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. In enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts.

*New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001); *Hamilton*, 270 F.3d at 782–83. The Supreme Court also stated that it may be inappropriate to apply judicial estoppel if a party's prior position was based on inadvertence or mistake. *New Hampshire*, 532 U.S. at 753.

*c. Standing*

To meet Article III's standing requirements, the party invoking federal jurisdiction bears the burden to show that it has "(1) suffered an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) that the injury is fairly . . . trace[able] to the challenged action of the defendant; and (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Davis v. ReconTrust Co.*, No. 2:12-CV-00212-KJD, 2014 WL 3514992, at *4 (D. Nev. July 16, 2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

The commencement of a case in bankruptcy creates an estate. 11 U.S.C. § 541(a). Property of the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The scope of section 541 is broad, and includes causes of action. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204–05 & n.9 (1983); *see also Sierra Switchboard Co. v. Westinghouse Elec. Corp.*, 789 F.2d 705, 707 (9th Cir. 1986).

James C. Mahan
U.S. District Judge

A trustee is the representative of the bankruptcy estate. 11 U.S.C. § 323(a). Once the bankruptcy petition is filed, the trustee is vested with all of the bankrupt's property. *Stein v. United Artists Corp.*, 691 F.2d 885, 890 (9th Cir. 1982). A bankruptcy trustee retains "the exclusive power to raise legal claims on behalf of the estate." *Estate of Spirtos v. One San Bernardino Cnty. Super. Ct. Case Numbered SPR 02211*, 443 F.3d 1172, 1175 (9th Cir. 2006).

Accordingly, a "bankrupt may assert title to assets that have been abandoned by the trustee, in addition to assets administered by the trustee and intended to revest in the debtor." *Stein*, 691 F.2d at 890. The Ninth Circuit holds that "[w]hen the bankrupt fails to list an asset, he cannot claim abandonment because the trustee has had no opportunity to pursue the claim." *Id.* at 891. Even if the trustee has a subjective intent to abandon a claim, the trustee can do so only after notice and a hearing. *Sierra Switchboard Co.*, 789 F.2d at 709.

*ii. Analysis*

Applying the Supreme Court's *New Hampshire* factors to this case, this court finds that judicial estoppel is warranted. First, it is well established that by failing to disclose his claims as a contingent asset in his bankruptcy, and by subsequently pursuing these claims against defendant, plaintiff has asserted clearly inconsistent positions. *See Dzakula*, 746 F.3d at 402. Indeed, plaintiff does not dispute that he has taken clearly inconsistent positions. Rather, plaintiff contends that any inconsistency would be remedied by amending his schedules.

However, courts have held that the amending of one's schedules after-the-fact does not excuse earlier failures to disclose. *See, e.g.*, *Laisure-Radke*, 313 F. App'x at 34; *see also Dzakula v. McHugh*, No. C 10-05462 PSG, 2011 WL 1807241, at *3 (N.D. Cal. Apr. 22, 2011), *aff'd*, 746 F.3d 399 (9th Cir. 2014). "After-the-fact amendments still burden courts by disrupting the orderly administration of bankruptcy estates. The offending litigants, not courts, should be made to bear the consequence of non-disclosure. It is the court system, after all, that judicial estoppel aims to protect." *Dzakula*, 2011 WL 1807241, at *4 (citing *Scoggins v. Arrow Trucking Co.*, 92 F. Supp. 2d 1372, 1376 (S.D. Ga. 2000)).

Second, it is equally clear that plaintiff successfully misled the bankruptcy court through his omission, as he received a standard discharge. *See Dzakula*, 746 F.3d at 402 ("A discharge of

debt by a bankruptcy court . . . is sufficient acceptance to provide a basis for judicial estoppel, even if the discharge is later vacated.") Finally, plaintiff derived an unfair advantage by "deceiving the bankruptcy court and [his] creditors, who relied on the schedules to determine what action, if any, they would take in the matter." *Id.*

Notably, plaintiff does not argue that the *New Hampshire* factors weigh against judicial estoppel. Rather, plaintiff's sole claim is that even if his positions are inconsistent, and he derived an advantage from such an inconsistency, his prior omission was "simply a mistake or clerical error." Therefore, plaintiff contends that judicial estoppel is not appropriate.

This court recognizes that it is not "bound to apply" judicial estoppel simply because (1) the plaintiff knew of the claims when the omission was made, and (2) the plaintiff had a motive to conceal the claims. *Ah Quin v. Cnty. of Kauai Dep't of Transp.*, 733 F.3d 267, 272 (9th Cir. 2013). The terms "mistake and inadvertence" are not subject to such a narrow construction, and their ordinary meanings are to be considered. *Dzakula*, 746 F.3d at 401. However, this court finds that plaintiff's claim of mistake must fail. In holding so, this court recognizes the important rationale underlying the rule:

> . . . *the integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets.* The courts will not permit a debtor to obtain relief from the bankruptcy court by representing that no claims exist and then subsequently to assert those claims for his own benefit in a separate proceeding. *The interests of both the creditors, who plan their actions in the bankruptcy proceeding on the basis of information supplied in the disclosure statements, and the bankruptcy court, which must decide whether to approve the plan of reorganization on the same basis, are impaired when the disclosure provided by the debtor is incomplete.*

*Hamilton*, 270 F.3d at 785 (emphasis in original); *In re Coastal Plains, Inc.*, 179 F.3d 197, 208 (5th Cir. 1999).

Plaintiff does not, and cannot, argue that he lacked knowledge of enough facts to know that a potential cause of action existed during the pendency of the bankruptcy. *See Dzakula*, 746 F.3d at 401. Indeed, not only did all of the facts giving rise to these claims occur prior to his initiation of bankruptcy, but plaintiff had also filed these same claims before he filed for bankruptcy. Therefore, plaintiff was fully aware of the claims, and the potential value of the claims, when he filled out his asset schedules.

James C. Mahan
U.S. District Judge

In addition, unlike in *Ah Quin*, plaintiff does not claim that he was unaware he had to disclose the pending lawsuit in the bankruptcy schedules. *See Ah Quin*, 733 F.3d at 277. Indeed, plaintiff could not make such an argument since he included the defendant's counterclaims as liabilities in his schedules. However, even if plaintiff had made such an argument, the Ninth Circuit has held that inadvertence due to subjective ignorance of the disclosure requirements may not be sufficient to defeat a claim of judicial estoppel. *Rose*, 295 F. App'x at 144.

Plaintiff also cannot argue that the mistake occurred because he happened to overlook that section of the asset schedule, as he listed another (entirely distinct) claim for damages as a contingent asset. In addition, unlike in *Dzakula*, where the court was unaware of the plaintiff's level of sophistication, here plaintiff is and was a practicing attorney in Nevada prior to, and throughout, his bankruptcy. 2011 WL 1807241, at *3.

Plaintiff argues that the fact that he disclosed the case in his statement of financial affairs shows his omission was inadvertent. However, such a disclosure seems to be the natural consequence of having listed the case as a potential liability. If plaintiff had omitted the claims against him from his liabilities, the disclosure within the statement of financial affairs would have more force.

Furthermore, contrary to plaintiff's assertion that his decision to reopen his bankruptcy case is indicative of his "desire to do the right thing," the fact that plaintiff has conspicuously waited to do so until after defendant filed his motion to dismiss on judicial estoppel grounds is evidence that the omission was *not* inadvertent. *See Dzakula*, 746 F.3d at 401–02; *Ah Quin*, 733 F.3d at 278; *In re Cunningham*, No. SA CV 14-652-JFW, 2014 WL 5427506, at *6 (C.D. Cal. Oct. 24, 2014). In fact, plaintiff's motion to reopen his bankruptcy case has come almost five years after his initial bankruptcy petition, but only weeks after defendant's motion to dismiss.

Other facts also suggest that plaintiff's omission was not inadvertent. Plaintiff's original complaint against defendant was brought in the name of his law firm rather than in his individual capacity. Plaintiff did this despite knowing that his claims had been transferred to him individually through the Assignment and Assumption Agreement created just three months prior. Plaintiff gives no explanation for why his initial complaint was filed by the wrong party in interest.

Defendant suggests that it was a strategic move on plaintiff's part so he could avoid listing his causes of action as individual assets in his bankruptcy filing. Although this is plausible, this court need not accept defendant's speculation to find plaintiff's claim of inadvertence invalid.

Plaintiff stresses that, under *Ah Quin*, it is inappropriate to presume deceit when a litigant reopens bankruptcy proceedings to file amended schedules. However, plaintiff ignores a critical distinction between this case and *Ah Quin*—the plaintiff in *Ah Quin* omitted any reference to the claims in her bankruptcy filings, whereas here plaintiff listed the case as a contingent liability. Indeed, in *Ah Quin*, there was factual support for the conclusion that the omission was a mistake. For example, not only were the plaintiff's claims completely absent from the bankruptcy filings, but the plaintiff filed an affidavit in which she explained how the mistake arose, namely, that she was unaware that she had to disclose her pending lawsuit. *Ah Quin*, 733 F.3d at 277–78. Furthermore, in *Ah Quin*, it was plaintiff's counsel that first raised the bankruptcy to the defendant's attention. *Id.* at 278.

As set forth above, plaintiff in this case shares none of these features with the plaintiff in *Ah Quin*. Plaintiff would have this court believe that although he had no issues with including defendant's counterclaims as part of his potential liabilities in his bankruptcy filings, he simply forgot to include those aspects of the case that might have been detrimental to his financial interests.

Plaintiff's argument that he accidentally shielded a potentially lucrative asset from his creditors (of which there were many) during the course of his bankruptcy cannot stand. Other courts have also recognized that the mere profession of "inadvertence" is not sufficient to defeat a factually sound defense of judicial estoppel, even under a motion to dismiss. *See In re Cunningham*, 2014 WL 5427506, at *6.

Applying judicial estoppel in this case best serves the purposes of the doctrine—to ensure full and honest disclosures by debtors in their original filings and to ensure the integrity of the judicial process. Therefore, defendant's motion to dismiss will be granted.

Further, even if the doctrine of judicial estoppel did not apply, the complaint would still be subject to dismissal on standing grounds. Prior to plaintiff's bankruptcy petition, plaintiff had

**James C. Mahan**
**U.S. District Judge**

various claims against defendant. The facts underlying these claims were known, and plaintiff even erroneously pursued them through his law firm. Therefore, when plaintiff filed his bankruptcy petition, his legal interests (including these causes of action) became the bankruptcy trustee's property. Accordingly, until the bankruptcy trustee manifests an intent to abandon these claims through notice and a hearing, plaintiff lacks standing to bring said claims on his own behalf.

*D. Motion for sanctions*

*i. Legal standard*

Federal Rule of Civil Procedure 11 requires that "[a] motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2). The motion must also be served upon the opposing party in accordance with Rule 5, and should not be presented to the court if "the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service." *Id.*

The main objective of Rule 11 is to deter baseless filings and curb litigation abuses. *Salman v. State of Nevada Comm. On Judicial Discipline*, 104 F. Supp. 2d 1262, 1270 (D. Nev. 2000). "A court considering a motion pursuant to Rule 11 must do two things: (1) decide whether a Rule 11 violation has occurred, and (2) decide whether to impose sanctions." *Smith & Green Corp. v. Trs. of Constr. Indus. & Laborers Health & Welfare Trust*, 244 F. Supp. 2d 1098, 1102 (D. Nev. 2003). The test for determining whether a Rule 11 violation has occurred is one of objective reasonableness. *Conn v. Borjorquez*, 967 F.2d 1418, 1421 (9th Cir. 1992).

Furthermore, sanctions are reserved for the "rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose." *Operating Eng'rs Pension Trust v. A-C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988). The fact that an "attorney's legal theory failed to persuade the [court] does not demonstrate that [counsel] lacked the requisite good faith in attempting to advance the law." *Id.* (internal quotations omitted).

*ii. Analysis*

As an initial matter, this court finds that defendant has failed to comply with the procedures outlined in Rule 11 for a motion for sanctions. Rule 11 requires that a motion for sanctions be made "separately from any other motion." Therefore, defendant's motion for sanctions had to be made separately from his motion to dismiss. *See Pannonia Farms, Inc. v. Re/Max Int'l, Inc.*, 407 F. Supp. 2d 41, 46 (D.D.C. 2005); *Mitchell v. Osceola Farms Co.*, 408 F. Supp. 2d 1275, 1280 (S.D. Fla. 2005); *Hoydal v. Prime Opportunities, Inc.*, 856 F. Supp. 327, 329 (E.D. Mich. 1994). Defendant merely added a request for sanctions within his motion to dismiss. This section is less than a page long, and does not even acknowledge Rule 11. Therefore, defendant's motion for sanctions is not in compliance with Rule 11.

Furthermore, this court finds that defendant's motion for sanctions also substantively fails. Defendant's sole argument for sanctions is that plaintiff intentionally brought the 2009 complaint through his law firm because it allowed plaintiff to "avoid listing the causes of action as his individual asset in his bankruptcy filings because the claims . . . were being pursued by [the law firm] rather than him individually."

An award of sanctions is reserved only for rare and exceptional circumstances. Absent concrete proof that plaintiff acted with such foresight in bringing the 2009 complaint through his law firm, such an accusation does not warrant sanctions. Therefore, defendant's motion for sanctions will be denied.

**III. Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendant's request for judicial notice, (doc. # 5), be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that plaintiff's motion to stay a ruling on defendant's motion to dismiss, (doc. # 16), be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that defendant's motion to dismiss, (doc. # 4), be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that defendant's request for sanctions, (doc. # 6), be, and the same hereby is, DENIED.

The clerk shall enter judgment accordingly and close the case.

DATED April 16, 2015.

James C. Mahan

UNITED STATES DISTRICT JUDGE